No. 23-10289-A

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

**UNITED STATES OF AMERICA**,
Appellee,

v.

**DEMETRIS HILL,**
Appellant.

On appeal from the United States District Court
for the Middle District of Georgia

**BRIEF OF APPELLANT
DEMETRIS HILL**

MOLLY HILAND PARMER
Parmer Law
1201 W. Peachtree Street, Suite 2300
Atlanta, GA 30309
(404)795-5060
Molly@Parmer.law

Counsel for Demetris Hill

No. 23-10289-A
United States v. Demetris Hill

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to 11th Cir. R. 26.1-2(a), counsel certifies that the following have an interest in the outcome of this appeal:

Dreyer, David N. – former trial attorney for Appellant

Hill, Demetris – Defendant/Appellant

Howard, Elizabeth S. – Assistant United States Attorney

Leary, Peter D. – United States Attorney

Odom, Joy – Assistant United States Attorney

Parmer, Molly Hiland – Attorney for Appellant

Self, Tilman E., III – Judge, United States District Court

Sterling, Michael Todd – former trial attorney for Appellant

Tanner, Eugene Carlos, III – former trial attorney for Appellant

Walker, Stuart E. – Assistant United States Attorney

Weigle, Charles H. – United States Magistrate Judge

United States of America, Appellee

Victim: No victims have been identified

No publicly-traded company or corporation has an interest in the outcome of this case or of this appeal.

**STATEMENT REGARDING ORAL ARGUMENT**

The defendant respectfully submits that oral argument is necessary to the just resolution of this appeal, which presents important legal issues of first impression in this circuit, including the scope of the False Claims Act. Oral argument will significantly enhance the decision-making process.

## TABLE OF CONTENTS

Certificate of Interested Persons and Corporate Disclosure Statement..... C-1

Statement Regarding Oral Argument.................................................. ii

Table of Citations ...................................................................... v

Statement of Jurisdiction.............................................................1

Statement of the Issues ...............................................................2

Statement of the Case .................................................................3

      A.    Introduction........................................................3

      B.    Course of Proceedings and Disposition Below............................4

      C.    Statement of Facts.................................................6

      D.    Standard of Review ...............................................14

Summary of the Argument............................................................16

Argument and Citation of Authority.................................................18

I.    The Evidence was Wholly Insufficient to Sustain the Theft of Government Property Allegation in Count 1 of the Indictment Where the Prosecution Offered No Evidence of the Money at Issue Belonging to the Government, Nor Any Evidence of the Defendant's Knowledge that His Conduct was Unlawful.................18

      A.    The government failed to prove that the property in Count 1 was the government's property. ....................................19

      B.    The government failed to prove that Mr. Hill knew he was not entitled to the property in Count 1. ...............................21

II.   The Evidence was Wholly Insufficient to Sustain the False Claims Allegation in Count 2 of the Indictment where the Prosecution Offered No Evidence of Mr. Hill Presenting a Claim Upon or Against the Government.............................................................23

III.  The Trial Court's Deliberate Ignorance Instruction, Which Was Not Supported by the Evidence, Resulted in a Constructive Amendment of the Indictment. ...................................................................26

IV.   Mr. Hill's False Claims Against the Government Charge is Unconstitutionally Void for Vagueness as Applied.............................29

Conclusion.........................................................................................................34

Certificate of Compliance and Service.............................................................35

# TABLE OF CITATIONS

## Federal Cases

*Bryan v. United States*,
    524 U.S. 184 (1998) ............................................................. 21

*Connally v. General Construction Co.*,
    269 U.S. 385 (1926) ................................................... 32, 33, 34

*Dimmick v. United States*,
    116 F. 825 (9th Cir.1902) ....................................................... 24

*Direct Sales Co. v. United States*,
    319 U.S. 703 (1943) ............................................................. 20

*Grayned v. City of Rockford*,
    408 U.S. 104 (1972) ............................................................. 32

*High Ol' Times, Inc. v. Busbee*,
    673 F.2d 1225 (11th Cir. 1982) .............................................. 31-32

*Johnson v. United States*,
    576 U.S. 591 (2015) ............................................................. 29

*Lanzetta v. New Jersey*,
    306 U.S. 451 (1939) ............................................................. 29

*\*Morissette v. United States*,
    342 U.S. 246 (1952) ............................................................. 21

*Papachristou v. City of Jacksonville*,
    405 U.S. 156, (1972) ............................................................ 32

*Smith v. Goguen*,
    415 U.S. 566 (1974) ............................................................. 32

*United States v. Bass,*
    404 U.S. 336 (1971) ........................................................ 34

*United States v. Behety,*
    32 F.3d 503 (11th Cir. 1994) ........................................ 27

*United States v. Branker,*
    395 F.2d 881 (2d Cir.1968) .......................................... 24

*United States v. Cohn,*
    270 U.S. 339 (1926) ........................................................ 30

*United States v. Cruz,*
    805 F.2d 1464 (11th Cir. 1986) .................................... 34

*United States v. Duncan,*
    816 F.2d 153 (4th Cir. 1987) ........................................ 30

*United States v. Fries,*
    725 F.3d 1286 (11th Cir. 2013) .................................... 14

*United States v. Friske,*
    640 F.3d 1288 (11th Cir. 2011) .................................... 14

*United States v. Garcia,*
    405 F.3d 1260 (11th Cir. 2005) .................................... 14

*United States v. Hesser,*
    800 F.3d 1310 (11th Cir. 2015) .................................... 23

*United States v. Hooshmand,*
    931 F.2d 725 (11th Cir.1991) ...................................... 15

*United States v. Jimenez,*
    705 F.3d 1305 (11th Cir. 2013) .................................... 14

*United States v. Kroesser*,
    750 F.2d 833 (11th Cir. 1985) ........................................................... 34

*United States v. Lopez*,
    420 F.2d 313 (2d Cir.1969) ............................................................... 24

*\*United States v. Madden*,
    733 F.3d 1314 (11th Cir. 2013) ........................................... 15, 27, 28

*United States v. McBride*,
    362 F.3d 360 (6th Cir. 2004) ....................................................... 30-31

*United States v. McRee*,
    7 F.3d 976 (11th Cir. 1993) ............................................................. 18

*\*United States v. Moore*,
    504 F.3d 1345 (11th Cir. 2007) ................................................. 14, 22

*United States v. Olano*,
    507 U.S. 725 (1993) ........................................................................ 15

*United States v. Rich*,
    752 F. App'x 958 (11th Cir. 2019) .................................................. 24

*United States v. Vaghela*,
    169 F.3d 729 (11th Cir. 1999) ........................................................ 20

*United States v. Wayerski*,
    624 F.3d 1342 (11th Cir. 2010) ...................................................... 15

*United States v. Young*,
    470 U.S. 1 (1985) ............................................................................ 15

*United States v. Young*,
    39 F.3d 1561 (11th Cir. 1994) ........................................................ 20

*Village of Hoffman Estates v. Flipside,*
   455 U.S. 489 (1982) ........................................................ 32

**Federal Statutes**

18 U.S.C. § 287 ............................................................. *passim*

18 U.S.C. § 641 ............................................................. *passim*

18 U.S.C. § 1343 ............................................................. 4, 6

18 U.S.C. § 3231 ............................................................. 1

18 U.S.C. § 3742 ............................................................. 1

28 U.S.C. § 1291 ............................................................. 1

31 U.S.C. § 3729 ............................................................. 31

**Federal Rules of Criminal Procedure**

Rule 29 ............................................................. 14, 22

\*  Pursuant to 11th Cir. R. 28-1(e), Mr. Hill notes that he primarily relies
   upon these citations.

No. 23-10289-A

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

————————————

**UNITED STATES OF AMERICA**,
Appellee,

v.

**DEMETRIS HILL,**
Appellant.

————————————

**STATEMENT OF JURISDICTION**

The district court had jurisdiction over this case under 18 U.S.C. § 3231 because an indictment was filed charging Mr. Hill with one or federal crimes. This is a direct appeal from an order and judgment of the district court; the Court of Appeals has jurisdiction over this appeal under 18 U.S.C. § 3742 and 28 U.S.C. § 1291. Mr. Hill filed the notice of appeal on January 24, 2023, within 14 days of the entry of the district court's judgment and commitment order. Fed. R. App. P. 4(b)(1)(A). This appeal is from a final order of the district court that disposes of all the parties' claims in this case.

1

## STATEMENT OF THE ISSUES

I.    Whether the evidence was wholly insufficient to sustain the theft of government property allegation in Count 1 of the indictment where the prosecution offered no evidence of the money at issue belonging to the government, nor any evidence of the defendant's knowledge that his conduct was unlawful.

II.   Whether the evidence was wholly insufficient to sustain the false claims allegation in Count 2 of the indictment where the prosecution offered no evidence of Mr. Hill presenting a claim upon or against the government.

III.  Whether the trial court's deliberate ignorance instruction, which was not supported by the evidence, resulted in a constructive amendment of the indictment.

IV.   Whether the false claims against the government charge is unconstitutionally void for vagueness as applied to the defendant.

# STATEMENT OF THE CASE

## A.    Introduction

The prosecution in this case failed to offer any evidence to prove that the defendant made a claim upon or against the government, nor that the money involved in this matter belonged to the government, nor that the defendant knew he was ineligible to receive the money, nor that the defendant was, in fact, disentitled to the money. The government simply failed to prove the most basic elements of this case, instead relying on a wholly unproven assumption that the defendant's role in a janitorial business precluded him from receiving disability payments from the Railroad Retirement Board ("RRB"). By failing to offer any evidence on multiple crucial elements, the government presented a manifestly insufficient case and the defendant's convictions must be vacated on both counts. Additionally, an erroneous jury instruction constructively amended the indictment, and one of the counts is unconstitutionally void for vagueness as applied.

**B.    Course of Proceedings and Disposition Below**

Demetris Hill was charged in a superseding indictment with one count of theft of government property, in violation of 18 U.S.C. § 641, one count of false claims against the government, in violation of 18 U.S.C. § 287, and one count of wire fraud in violation of 18 U.S.C. § 1343. DE:44. Count 1 alleged that Mr. Hill, between 2016 and 2021, "did knowingly and willfully steal and purloin, disability benefits paid by the Railroad Retirement Board." Count 2 alleged that Mr. Hill, between 2016 and 2021, "did knowingly and intentionally make and present a false, fictitious, and fraudulent claim against the Railroad Retirement Board, that is, a claim for disability benefits, knowing that the claim was false, fictitious, and fraudulent in that Defendant knowingly and intentionally withheld information from the Railroad Retirement Board while receiving ongoing disability payments, which information was material to the determination of the amount of benefits to which the Defendant was eligible to receive." Count 3 alleged that Mr. Hill "did knowingly devise and intend to devise a scheme and artifice to defraud the Railroad Retirement Board" by committing various acts, including involving himself with a business and "helping manage its banking, securing vehicle loans, and communicating with the public." DE:44.

4

Mr. Hill held the government to their burden of proof and elected to have a jury trial. At the close of the government's evidence, Mr. Hill orally moved for a judgement of acquittal. DE:78:185-200. He argued that the government had charged him with a theft, not a conversion, in Count 1 and that none of the government witnesses testified that Mr. Hill was not entitled to his monthly annuity based on his work with SparClean. DE:78:188. He also argued that there had been no testimony nor evidence that he had made a claim upon the government in the time frame alleged in Count 2. DE:78:191.

The district court expressed concern about whether the government had proven Count 2 but deferred ruling on the motion and allowed the case to proceed. *See* DE:78:200. (THE COURT: "I'm telling the government, I am worried about Number 2. I'm worried about Number 2, but I'm going to send this to the jury and we'll see what happens, and I will deal with Number 2 later if we have to.") Following the two-day trial, the jury returned a verdict of guilty on Counts 1 and 2 but found Mr. Hill not guilty of Count 3. DE:67. Mr. Hill filed a motion for new trial and a motion for judgement of acquittal following his conviction. DE:74. Both were denied. DE: 81.

On January 19, 2023, Mr. Hill was sentenced to a custodial term of thirty-three (33) months to be followed by a three (3) year term of supervised release along with a $10,000 fine, $200 Special Assessment and $184,721.00 in restitution. DE:88. He is currently incarcerated.

## C.    Statement of Facts

Mr. Hill is a disabled man who applied for disability benefits from the Railroad Retirement Board. The RRB determined Mr. Hill was eligible for total and permanent disability in 2012 and Mr. Hill began receiving monthly payments. DE:77:48,104. The government did not challenge the validity of the RRB's initial determination that Mr. Hill was disabled, but rather, whether he remained eligible for the payments he received.

While Mr. Hill was receiving his monthly disability annuities from the RRB, he helped his former wife, Kameo Hill, start a janitorial business called SparClean Premier Cleaning Solutions ("SparClean"). At trial, the government argued that Mr. Hill failed to report his work with SparClean to the RRB and that, by continuing to receive his annuity payments, Mr. Hill violated 18 U.S.C. § 641, 18 U.S.C. § 287, and 18 U.S.C. § 1343.

The government presented four witnesses from the RRB at trial: 1) Vince Clancy, a special agent from the Office of the Inspector General of the

RRB; 2) Guadalupe Contreras, the chief of the Railroad Unemployment Insurance Act Internet and Support of the RRB; 3) Ian McCants, the district manager of the RRB; 4) and Douglas Williams, a special agent from the Office of the Inspector General of the RRB. The government also called two witnesses who did business with SparClean. None of the government's RRB witnesses testified that Mr. Hill was not entitled to his RRB disbursements, the central question underlying the entirety of the indictment.

Agent Clancy detailed his investigation of the case, which included reviewing articles of incorporation from the Secretary of State's Office wherein Mr. Hill listed himself and Mrs. Hill as registered agents and general partners for SparClean. DE:77:37. Agent Clancy explained that during an interview – which Mr. Hill freely engaged in, without a lawyer – Mr. Hill admitted he was one of the registered agents of SparClean and that "he was just helping out his wife at the time." DE:77:44. Agent Clancy testified that Mr. Hill explained that Mrs. Hill had trouble registering the business and opening bank accounts because she had an issue with her birth certificate and she struggled to obtain a driver's license. DE:77:47,48.

Agent Clancy explained that the determination of whether someone is disabled is made by doctors with the RRB. DE:77:48. He testified that he did

not know whether Mr. Hill was presently entitled to his benefits. *See* DE:77:51. ("Is Mr. Hill currently eligible for Railroad Retirement Disability?" "Is he eligible? I can't answer that question.") He testified that Mr. Hill was still receiving benefits. *See* DE:77:51. ("Do you know if he's still receiving Railroad Retirement Disability?" "To my knowledge, yes.") He testified that Mr. Hill was not on the payroll of SparClean. *See* DE:77:53. ("When you reviewed the bank records, was Mr. Hill on the payroll for SparClean?" "Not that I've seen.") Agent Clancy's testimony centered around Mr. Hill's obligation to report work to the RRB; it did not address whether working for SparClean would render Mr. Hill ineligible to receive disability payments.

Ms. Contreras testified that she developed a contact log for the RRB. DE:77:58. She did not see any entries in the log for Mr. Hill that indicated he had reported his employment for SparClean. DE:77:64. However, Ms. Contreras also testified that she had received a fax from Mr. Hill on February 8, 2013, shortly after he became involved with SparClean. Ms. Contreras did not know and could not testify to the contents of the fax the RRB received. DE:77:72.

Mr. McCants explained what happens when someone who is receiving disability payments from the RRB reports that they are working. Notably,

Mr. McCants did not say working automatically rendered someone ineligible for disability annuities. Rather, someone from RRB headquarters reviews the report of work and decides whether the related earnings will have an impact on the amount of disability payment received. *See* DE:77:79. ("And can working have any impact on the amount of payment someone is receiving?" "Yes. Depending on the amount of earnings, yes.")

Mr. McCants said that annuitants receive reminders about the RRB's disability program and its requirements. DE:77:78. Mr. McCants read from Booklet RB-1d, which described how work and earnings affect the payment of an RRB annuity. DE:77:84. The booklet defined earnings as "wages before payroll deductions, commissions, and other payments for work (such as room and board) and net earnings from self-employment." DE:77:87. According to Booklet RB-1d, "[i]f your earnings are greater than the disability earnings for a month, and you do not report it to us within two months, you will be penalized." DE:77:87. Mr. McCants never testified – and the booklet did not say – that failing to report resulted in an automatic cancellation or denial of one's annuity.

Mr. McCants, like Agent Clancy, did not know and could not testify as to whether Mr. Hill was ineligible for his RRB benefits. *See* DE:77:105. ("So

you wouldn't know if Mr. Hill were still eligible to receive his benefits as we speak – as we talk today; is that correct?" "That's correct." "So, you wouldn't know if there was ever a period where he was not entitled to receive benefits; is that correct?" "That's correct.") He also explained that working did not automatically disqualify someone from receiving their monthly annuity. DE:77:109. He confirmed that, so long as someone was under the threshold of a certain amount of monthly earnings, they would still be entitled to their benefits.

Agent Williams testified that he was also at the interview of Mr. Hill, alongside Agent Clancy. Agent Williams confirmed that Mr. Hill stated that he opened SparClean and its business bank accounts jointly with his wife because she could not obtain a driver's license due to an issue with the name on her birth certificate. DE:78:151. Mr. Hill told Agent Williams that he had explained his work with SparClean to the RRB in person and believed that, given his limited involvement, he was under no obligation to further report it. DE:78:167. He said that during the interview, Mr. Hill called his wife to confirm that he had, in fact, reported his role in SparClean to the RRB. DE:78:171. Agent Williams also testified that Mr. Hill and his wife jointly applied for commercial loans, and on their application, both listed their

10

annual income as $125,000. DE:78:159. There was no testimony from Agent Williams about the source of this annual income, however.

Agent Williams did not check to see whether Mr. Hill was receiving any income that would not have to be reported to the RRB, such as investments in stocks, mutual funds, or property. DE:78:178-179. He did not know who was on the payroll for SparClean. DE:78:180. He did review SparClean's business banking accounts, however, and said he did not see any monetary distributions come from those accounts to Mr. Hill. DE:178:181.

The remaining government witnesses at trial were individuals who worked for companies that had hired SparClean. Amy Smith, an employee of Triangle Chemical Company, explained that Mr. and Mrs. Hill came to her business and took measurements to provide a price estimation for SparClean's work. DE:77:117. She also testified to receiving an email from SparClean that was from Mr. Hill. DE:77:118.

Jennifer Vance, an employee of GHS Distribution, testified that Mr. and Mrs. Hill also came to her business and took measurements. DE:78:124. She said that she had received a proposal from Mr. Hill for SparClean's work, and that Mr. Hill was listed as a team member of SparClean in that

proposal. DE:78:126. She also testified that Mr. and Mrs. Hill had cleaned GHS Distribution "a handful of times" when their regular, weekly cleaner, Ms. Linda, was unavailable, but her primary contact at SparClean was Kameo Hill, Mr. Hill's wife. DE: 78:129-130.

The government did not present any witnesses from the headquarters of the RRB, whom Mr. McCants testified were responsible for making determinations of whether someone could continue to receive disability benefits if working and earning money. The government did not present any evidence of Mr. Hill receiving earnings from SparClean. The government did not present any evidence or testimony that Mr. Hill's affiliation with SparClean would, in fact, render him ineligible for the benefits that he continued to receive.

Mr. Hill called his wife, Kameo Hill, to testify. Mrs. Hill testified that Mr. Hill had invested money to help her open SparClean. DE:78:206. She confirmed that Mr. Hill assisted her in opening bank accounts for SparClean because she had no first name on her birth certificate and, as a result, she had difficulties obtaining valid identification. DE:78:207. She testified that Mr. Hill would advise her on business matters and accompany her to jobs on occasion. DE:78:211. She testified that while she and Mr. Hill had an

arrangement, wherein he would be entitled to get his investment in SparClean returned, he never received earnings from SparClean. *See* DE:78:212. ("Was Mr. Hill paid or compensated in any way for his work with SparClean?" "He doesn't work for SparClean." "Was he compensated in handling any of the things that he handled with you at SparClean? Was he paid?" "No. No. No.")

Mrs. Hill explained that she had called the RRB and told them about SparClean to ask whether it would affect Mr. Hill's disability benefits. DE:78:220. She told the RRB she did not pay Mr. Hill and the RRB essentially responded with: "[W]hat's yours is yours and what's his is his." *Id*. She testified that she and Mr. Hill went to the RRB headquarters in Chicago, where Mr. Hill brought up the matter again. *Id*. She said Mr. Hill called her and put her on speaker phone during his interview with the Agents Clancy and Williams, and she confirmed that she and Mr. Hill had told the RRB about SparClean. DE:78:223. Mrs. Hill also confirmed that Mr. Hill suffered from a number of illnesses, including colitis. DE:78:246. She testified that Mr. Hill is "in pain a lot, and he's sick a lot." *Id*. She also said that she and Mr. Hill were estranged and would soon be divorced. DE:78:206.

**D.    Standard of Review**

This Court exercises *de novo* review of the sufficiency of the evidence to sustain a conviction and will reverse a verdict if the record demonstrates a lack of evidence from which a jury could find guilt beyond a reasonable doubt. *United States v. Jimenez*, 705 F.3d 1305, 1308 (11th Cir. 2013); *United States v. Garcia*, 405 F.3d 1260, 1269 (11th Cir. 2005). Where, as here, the trial court reserves ruling on a Rule 29 motion judgment of acquittal at the end of the government's case, the snapshot provision in the last sentence of Rule 29(b) applies and the Court's review of the sufficiency of the evidence is "limited to the evidence in the government's case in chief." *United States v. Moore*, 504 F.3d 1345, 1347-1348 (11th Cir. 2007).

In considering a challenge to the sufficiency of the evidence, the Court draws all reasonable inferences from the evidence in favor of the jury's verdict. However, "speculation is not enough to sustain a conviction based on circumstantial evidence." *United States v. Friske*, 640 F.3d 1288, 1293 (11th Cir. 2011). If the government has failed to meet its burden as to an essential element of any count, the conviction on that count must be vacated. *Id.*; *United States v. Fries*, 725 F.3d 1286, 1283-124 (11th Cir. 2013).

This Court uses plain error review when faced with a district court's unobjected-to constructive amendment of a defendant's indictment. *United States v. Madden*, 733 F.3d 1314 (11th Cir. 2013). The plain-error test has four prongs: there must be (1) an error (2) that is plain and (3) that has affected the defendant's substantial rights; and if the first three prongs are met, then a court may exercise its discretion to correct the error if (4) the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 113 (1993)(quoting *United States v. Young*, 470 U.S. 1, 15 (1985)).

This Court exercises *de novo* review of whether a statute is void for vagueness. *United States v. Hooshmand*, 931 F.2d 725, 737 (11th Cir. 1991). Where, as in this case, a vagueness challenge does not involve the First Amendment, the analysis must be as applied to the facts of the case. *United States v. Wayerski*, 624 F.3d 1342, 1347 (11th Cir. 2010).

## SUMMARY OF THE ARGUMENT

I.    The government failed to prove that Mr. Hill, who was determined eligible for disability annuities by the RRB in 2012, was no longer entitled to his monthly payments. No witness testified that Mr. Hill's role with a janitorial business resulted in earnings over a threshold limit, nor that his role would render him ineligible for the money he continued to receive from the RRB, even though the government called several RRB employees to the witness stand. There was no way for Mr. Hill to know that his work, from which he earned no money, would make his receipt of his annuities illegal; thus, the first and last elements of the 18 U.S.C. § 641 charge were without evidentiary foundation.

II.    The government failed to prove any of the elements of the 18 U.S.C. § 287 charge because it introduced absolutely no evidence of Mr. Hill making a claim upon or against the government. The government made no effort to show that Mr. Hill made a demand or a request for payment, because no such evidence exists. Without evidence of a claim, there can be no evidence that a claim is false nor that the defendant knew a claim was fraudulent. The government failed to prove that Mr. Hill's role in SparClean would render him ineligible to continue to receive his disability payments

16

and rather, argued that he had an obligation to report his work and earnings with SparClean to the RRB. Without evidence that Mr. Hill was, in fact, disentitled to his monthly annuities, Mr. Hill's case is distinguished from other false claims cases wherein the defendant is clearly not authorized to receive money from the government.

III.    The district court erred in instructing the jury on deliberate ignorance when the government proceeded on a theory that Mr. Hill knew he was required to report changes in his earnings to the RRB and knew that he was not supposed to be receiving his payments. This empowered the jury to convict Mr. Hill whether they believed he knew he was entitled to his disability benefits or not, thereby broadening the indictment.

IV.    Mr. Hill's false claims charge is constitutionally void for vagueness as applied to him, because it failed to put him on fair notice that his conduct was a crime. Without the key term "claim" defined in 18 U.S.C. § 287, an ordinary person of common intelligence would believe that a claim requires a demand or request, neither of which Mr. Hill engaged in making.

## ARGUMENT AND CITATION OF AUTHORITY

**I.    The Evidence was Wholly Insufficient to Sustain the Theft of Government Property Allegation in Count 1 of the Indictment Where the Prosecution Offered No Evidence of the Money at Issue Belonging to the Government, Nor Any Evidence of the Defendant's Knowledge that His Conduct was Unlawful.**

To prove a violation under 18 U.S.C. § 641, the government must show that (1) the money or property belonged to the government, (2) the defendant fraudulently appropriated the money or property to her own use or the use of others, and (3) the defendant did so knowingly and willfully with the intent to either temporarily or permanently deprive the owner of the use of the money or property. *United States v. McRee*, 7 F.3d 976, 980 (11th Cir. 1993) (*en banc*). Here, the government failed to present any evidence whatsoever as to both the first and the third element of the offense. Without the first element, the second element fails. As such, Mr. Hill's conviction as to Count 1 should be reversed.

The government argued that Mr. Hill committed the crime in Count 1 because he did not report a change in his employment to the RRB. But to meet the elements of § 641, the government would have to show that Mr. Hill's monthly disability payments were, in fact, property of the government. It would have to show that Mr. Hill was not entitled to the

18

annuities and that Mr. Hill took the money through fraud. It would have to prove that Mr. Hill knew that he was disentitled to the money and that by taking it, he knew his conduct was unlawful. The evidence and testimony at trial support none of those things.

### A.    The government failed to prove that the property in Count 1 was the government's property.

The government's evidence as to the property in Count 1 belonging to the government was speculative at best and insufficient for a conviction. The RRB determined Mr. Hill received a total and permanent disability in 2012 and, as a result, he received monthly annuities. DE: 77:48;104. No government witnesses testified that Mr. Hill was not entitled to his annuities at the time he was deemed disabled by the RRB, which was four years before the timeframe listed in the superseding indictment.

Count 1 charged a theft wherein Mr. Hill stole government property between 2016 and 2021. DE:44. There was a never a determination made by the RBR during that timeframe – nor has there ever been – that Mr. Hill's affiliation with SparClean rendered him ineligible for his monthly annuities. The government failed to introduce any evidence that Mr. Hill's earnings went beyond a threshold that would disqualify him from his disability

payments, relying instead on evidence that Mr. Hill, along with Mrs. Hill, listed their income as $125,000 on a loan application. But there was no testimony nor evidence about the source of this income, and no testimony nor evidence that Mr. Hill earned a dime from SparClean.

Argument does not suffice where evidence is completely lacking or so tenuous as to rest on nothing more than an assumption. A conviction cannot be sustained via speculation or piling inference upon inference where the question simply is unanswerable based on the facts admitted in evidence and presented to the jury. *Direct Sales Co. v. United States*, 319 U.S. 703, 713 (1943); *see United States v. Young*, 39 F.3d 1561 (11th Cir. 1994) (mere speculation as to the interpretation of words used by the defendant insufficient to sustain conviction); *United States v. Vaghela*, 169 F.3d 729, 734 (11th Cir. 1999) (holding that under § 1503, government must prove "'the natural and probable effect of interfering with the due administration of justice' in a way that is more than merely 'speculative'")(quoting *United States v. Aguilar*, 515 U.S. 593, 601 (1995)).

As Mr. McCants made clear, eligibility for RRB disability payments hinges on the amount of earnings from work. DE:77:79. Failing to report work and earnings could result in a penalty, but would not automatically

prohibit someone from receiving their disability payments. DE:77:87. Agent Williams said that his review of SparClean's business account showed no monetary distributions to Mr. Hill. DE:78:181. In failing to introduce any evidence at all about earnings Mr. Hill had from SparClean, nor any finding from the RRB headquarters that those earnings would make him disentitled to his annuities, the government failed entirely to meet its burden as to the first element of Count 1.

### B.    The government failed to prove that Mr. Hill knew he was not entitled to the property in Count 1.

Section 641 requires a "knowingly" standard, defined by the Supreme Court as "knowledge of the facts that constitute the offense," *Bryan v. United States*, 524 U.S. 184, 193 (1998). It imposes knowledge of non-entitlement or knowledge of wrongfulness, which makes the *mens rea* closer to "willfully." *See id.* at 191–92, ("[I]n order to establish a willful violation of a statute, the government must prove that the defendant acted with knowledge that his conduct was unlawful." (internal quotation marks omitted)).

The Supreme Court in *Morissette v. United States*, 342 U.S. 246 (1952) recognized that use of the word "knowing" in § 641 "requires more than knowledge that defendant was taking property into his possession. He must

21

have had knowledge of the facts, though not necessarily the law, that made the taking a conversion," and that "whether the mental element that Congress required be spoken of as knowledge or as intent, would not seem to alter its bearing on guilt." *Id*. at 241. To sufficiently prove Count 1 in this case, the government had to show that Mr. Hill knew the monthly payments he received – and continued to receive even while on trial – were funds to which he was disentitled. Mr. Hill could not know that because that determination has never been made.

Knowing that you are receiving payments is not enough; a defendant must know that they are not entitled to receive those payments. In *United States v. Moore*, 504 F.3d 1345 (11th Cir. 2007), this Court held that the district court erred in denying a Rule 29 motion of acquittal because the government failed to present evidence of "any knowledge that [the defendants] were not entitled to keep receiving" government benefits. *Id*. at 1349. The requisite knowledge could not be inferred from the fact that the defendants knew that they continued to receive benefit payments. *Id*.

Notably, in *Moore*, it was clear the defendants were not entitled to the money. Here, that element was never established by the government. To this

day, it is unknown whether Mr. Hill would be rendered ineligible for his monthly annuities had he reported his work with SparClean.

In denying Mr. Hill's motion for acquittal, the district court erroneously concluded "that (Mr. Hill's) eligibility hinged on his open and transparent communication with the RRB." DE:81:7. But rather, his eligibility hinged on his *earnings*. Because there was no testimony nor evidence regarding Mr. Hill's earnings, nor whether he had earnings that exceeded the cap for eligibility set by the RRB, the government failed to meet their burden as to the third element of Count 1.

## II.    The Evidence was Wholly Insufficient to Sustain the False Claims Allegation in Count 2 of the Indictment where the Prosecution Offered No Evidence of Mr. Hill Presenting a Claim Upon or Against the Government.

To prove a violation of 18 U.S.C. § 287, the government must establish that: (1) the defendant presented a claim against the United States to an agency or department thereof; (2) such claim was false, fictitious, or fraudulent; and (3) the defendant knew that the claim was false, fictitious, or fraudulent. *United States v. Hesser,* 800 F.3d 1310 (11th Cir. 2015). Here, there was absolutely no evidence that Mr. Hill presented a claim whatsoever.

After the government's presentation of evidence and after his trial had concluded, Mr. Hill argued that there had been no evidence that he had presented a claim as required under the statute. The district court held that because Mr. Hill saw the direct deposits from the RRB come into his account each month and never reported his work with SparClean, there was sufficient evidence that he had made a false claim. DE:81:9. This was error.

It is true that a false claim against the government can be made without making a false statement, such as by endorsing and cashing a check to which one is not entitled, *see*, *e.g.*, *United States v. Branker*, 395 F.2d 881, 889 (2d Cir. 1968), cert. denied sub nom. *Lacey v. United States*, 393 U.S. 1029 (1969); *Dimmick v. United States*, 116 F. 825 (9th Cir. 1902), cert. denied, 189 U.S. 509 (1903) (holding that demand upon a bill already paid or unauthorized demand upon unpaid bill constitutes a false claim even though bill itself contains no false statement); *see also United States v. Lopez,* 420 F.2d 313, 314 (2d Cir. 1969). But in those false claim cases, the defendant was clearly disentitled to the bill or check. The district court cited *United States v. Rich*, 752 F. App'x 958 (11th Cir. 2019) for the proposition that a false claim against the government can be as simple as endorsing a check. But unlike in Mr. Hill's case, Rich acknowledged she presented a 'claim' against the IRS within

24

the meaning of § 287. *Id*. at 959. Further, Rich's refund check was fraudulent; she did not pay the money indicated on her tax return and she was not entitled to any refund. *Id*.

There was no evidence presented at trial – and there is no evidence that exists – that Mr. Hill was not entitled to his monthly RRB annuity. That determination has never been made by the RRB. Rather, the evidence showed Mr. Hill was required to report work and earnings to the RRB and that he failed to do so. But the government failed to present specific, competent evidence about Mr. Hill's earnings and whether those earnings would render him ineligible for his monthly RRB annuities. Instead, the government's witnesses testified that they did not know whether Mr. Hill was currently ineligible for his disability benefits; they did not see any monetary distributions going from SparClean's business account to Mr. Hill; and they did not know whether Mr. Hill was on SparClean's payroll.

Mr. Hill's case is distinguishable from the check cashing § 287 cases. He did not make an affirmative claim for payment nor did he receive money to which he was unquestionably not entitled. Without any evidence or testimony that Mr. Hill presented a claim against the government whatsoever, Count 2 must be reversed.

### III. The Trial Court's Deliberate Ignorance Instruction, Which Was Not Supported by the Evidence, Resulted in a Constructive Amendment of the Indictment.

The government proceeded on a theory that Mr. Hill *knew* he was required to report changes in his earnings to the RRB. It argued that Mr. Hill received mailed reminders about his duty to report and that he read them. DE:78;283. His failure to report his work with SparClean, the government argued, formed the basis of criminal activity: he engaged in theft and fraud, alleged the government, because Mr. Hill knew he had to report his work with SparClean and failed to do so. Setting aside whether failing to report work is sufficient for a conviction without a determination that the defendant was truly ineligible for benefits, the government did not argue nor present evidence that Mr. Hill deliberately avoided knowing about his criminal conduct. Without that support in the record, the district court's deliberate ignorance instruction was error.

The flawed deliberate ignorance instruction given by the district court resulted in a constructive amendment of the indictment by allowing the jury to convict based on actual knowledge, deliberate ignorance, or some combination of the two. This is contrary to the allegation in the indictment

26

that Mr. Hill had actual knowledge that his conduct was illegal[1].    A constructive amendment occurs when the essential elements of the offense contained in the indictment are altered to broaden the possible bases for conviction beyond what is contained in the indictment. *Madden*, 733 F.3d 1314 at 1318. A constructive amendment requires per se reversal when the issue is properly preserved for appeal. *United States v. Behety*, 32 F.3d 503, 508 (11th Cir. 1994).

Mr. Hill did not object to the deliberate ignorance instruction at trial. However, this Court has reversed under the plain error standard when a jury instruction broadened the possible bases for conviction beyond what is contained in the indictment. *See Madden*, 733 F.3d 1314. This Court's precedent makes clear that a defendant can only be convicted for a crime charged in the indictment. *Id*. at 1318, 1323. In *Madden*, the error affected the defendant's substantial rights because the Court could not say "with certainty" that he was convicted solely on the charge made in the indictment. *Id*. Madden's conviction was reversed because it was "self-evident" that

---

[1] The Superseding Indictment alleged Mr. Hill "did knowingly and willfully steal and purloin" in violation of § 641 and "did knowingly and willfully make and present a false, fictitious, and fraudulent claim" in violation of § 287. DE:44.

"convicting a defendant of an unindicted crime affects the fairness, integrity, and public reputation of judicial proceedings in a manner most serious." *Id.*

Like *Madden*, Mr. Hill meets the plain error standard. The district court erred when it gave the jury the deliberate ignorance instruction. The court's error was clear because it allowed the jury to convict Mr. Hill whether they believed he knew he was entitled to his disability benefits or not. The instruction thereby broadened the indictment, which plainly alleged that Mr. Hill acted knowingly and willfully in both Counts 1 and 2.

There is no way to know whether the jury convicted Mr. Hill on either or both counts on the extraneous element introduced through the instruction. Without certainty that Mr. Hill's jury found his actions to be knowing and willful, the court's error affected Mr. Hill's substantial rights. Given the possibility that Mr. Hill was convicted on unindicted crimes "affects the fairness, integrity, and public reputation of judicial proceedings in a manner most serious." *Madden*, 733 F.3d at 1314 (quoting *United States v. Floresca*, 38 F.3d 706, 714 (4th Cir. 1994)(*en banc*)).

**IV.  Mr. Hill's False Claims Against the Government Charge is Unconstitutionally Void for Vagueness as Applied.**

Due process is violated when a criminal law is so vague it fails to give ordinary people fair notice of the conduct it punishes or so standardless that it invites arbitrary enforcement. *Johnson v. United States*, 576 U.S. 591 (2015), citing *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). "No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids." *Lanzetta v. New Jersey*, 306 U.S. 451, 453 (1939) [footnote omitted].

The false claims statute, 18 U.S.C. § 287, provides:

> Whoever <u>makes</u> or <u>presents</u> to any person or officer in the civil, military, or naval service of the United States, or to any department or agency thereof, any claim upon or against the United States, or any department or agency thereof, <u>knowing such claim to be false</u>, fictitious, or fraudulent, shall be imprisoned not more than five years and shall be subject to a fine in the amount provided in this title.

[emphasis added]. The natural meaning of these words, read by an ordinary person of common intelligence, is first, that the defendant must *make* or *present* a claim against the United States and, second, must do so knowing the claim presented is false. Nothing in the wording of the statute gives an ordinary person of common intelligence fair notice that continuing to *receive*

benefits – to which you have been properly determined to be eligible – and never making an affirmative claim to the government that you are still entitled to those benefits, could result in a 5-year sentence of incarceration at a federal penitentiary. Section § 287 as applied to Mr. Hill did not put him on fair notice that his conduct was a crime.

Additionally, the critical term "claim" remains undefined in the statute. Various federal appellate courts have struggled with the overt lack of a definition for this key term. The Fourth Circuit Court of Appeals, in *United States v. Duncan*, extracted a definition from a 1926 United States Supreme Court case, *United States v. Cohn*, 270 U.S. 339, 252-53 (1926), which included:

> While the word "claim" may sometimes be used in the broad juridical sense of "a demand of some matter as of right made by one person upon another, to do or to forbear to do some act or thing as a matter of duty," it is clear, in the light of the entire context, that in the present statute, the provision relating to the payment or approval of a "claim upon or against" the government relates solely to the payment or approval of a claim for money  or property to which a right is asserted against the government, based upon the government's own liability to the claimant.

*United States v. Duncan*, 816 F.2d 153, 155 (4th Cir. 1987). In *United States v. McBride*, the Sixth Circuit decried the lack of a statutory definition and

utilized one from a case construing the civil version of the False Claims Act.

*See* 362 F.3d 360 (6th Cir. 2004). The civil component of the False Claims Act,

31 U.S.C. § 3729(c), defines the word "claim" as follows:

> (2) the term "claim"—
>> (A) means any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that—
>>> (i) is presented to an officer, employee, or agent of the United States; or
>>> (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government—
>>>> (I) provides or has provided any portion of the money or property requested or demanded; or
>>>> (II) will reimburse such contractor, grantee, or other recipient for any  portion of the money or property which is requested or demanded; and
>> (B) does not include requests or demands for money or property that the Government has paid to an individual as compensation for Federal employment or as an income subsidy with no restrictions on that individual's use of the money or property[.] .. .

31 U.S.C. § 3729(c). The court in *McBride* further noted that Black's Law

Dictionary defined claim as "a <u>demand</u> for money or property as of right".

*Id*. [emphasis added]. Where a statute does not define a term, a court must

give words their common and ordinary meaning, absent some established

technical definition, unless the legislature intended otherwise. *High Ol'*

*Times, Inc. v. Busbee*, 673 F.2d 1225, 1229 (11th Cir. 1982). Here, an ordinary person of common intelligence would believe that a claim requires a demand or request, neither of which Mr. Hill engaged in making.

Penal laws must contain sufficient notice so that those who could, or are charged with violating them, have fair warning of what actions constitute a crime, so one can conform their conduct to the laws. *Village of Hoffman Estates v. Flipside*, 455 U.S. 489 (1982); *Smith v. Goguen*, 415 U.S. 566 (1974); *Grayned v. City of Rockford*, 408 U.S. 104 (1972); *Papachristou v. City of Jacksonville*, 405 U.S. 156, (1972); *Connally v. General Construction Co.*, 269 U.S. 385 (1926). Although the doctrine focuses both on actual notice to citizens and arbitrary enforcement, the Supreme Court has recognized that the more important aspect of vagueness doctrine "is not actual notice, but the other principal component of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement." *Smith*, *supra*, 415 U.S. at 574. When the legislature fails to provide such minimal guidelines, a criminal statute may permit "a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections." *Id.*, at 575; *Kolender* at 352 (1983).

32

Here, turning to the issue of the charges levied against Mr. Hill, it is alleged in the superseding indictment that he knowingly presented a claim for disability benefits while intentionally withholding information from the RRB that was material to the determination of the amount of benefits to which he was eligible to receive. DE:44. Such charge must be found insufficient as a matter of law and unduly vague, as there is no mention as to why the alleged claim was false or fictitious, and if the government intends that passively receiving benefits without making an affirmative request or demand constitutes the false claim, Mr. Hill did not have sufficient notice of what conduct is illegal. Specifically, the term "claim" is not sufficiently defined to avoid the pitfalls of the void for vagueness doctrine.

A statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law. *Connally v. General Const. Co.*, 269 U.S. 385, 391 (1926). "The dividing line between what is lawful and unlawful cannot be left to conjecture . . . The crime, and the elements constituting it, must be so clearly

33

expressed that the ordinary person can intelligently choose, in advance, what course it is lawful for him to pursue." *Connally*, 269 U.S. at 393.

When there is an ambiguity in a criminal statute, that ambiguity must be resolved in favor of the defendant. *United States v. Kroesser*, 750 F.2d 833 (11th Cir. 1985). The rule of lenity reflects the sentiment that in a free society men should not languish in prison unless the duly elected representatives of society have expressly and clearly required it. *United States v. Cruz*, 805 F.2d 1464 (11th Cir. 1986). It serves a two-fold purpose of requiring legislatures to give fair warning of what conduct is prescribed and insuring that "legislatures and not courts . . . define criminal activity." *United States v. Bass,* 404 U.S. 336, 348 (1971). Because Count 2 was unconstitutionally void for vagueness as applied to Mr. Hill – or, at the very least, ambiguous – his conviction must be reversed.

## CONCLUSION

Based upon the foregoing argument and citations of authority, the Court should reverse the defendant's convictions, or alternatively remand for a new trial or for resentencing.

MOLLY HILAND PARMER
Counsel for Demetris Hill

**CERTIFICATE OF COMPLIANCE AND SERVICE**

This is to certify that the foregoing brief is in compliance with Federal Rule of Appellate Procedure 32(a)(5), (6) because it has been prepared in Book Antiqua 14 point, a proportionally-spaced typeface, using the Microsoft Word 2016 word processing software. Moreover, this brief also complies with the type-volume limitation set forth in Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because it includes no more than 7,115 words, according to the same software. Finally, on the date set forth below, counsel uploaded this brief to the Court's web site, which promptly served opposing counsel:

> STUART E. WALKER
> Assistant United States Attorney
> United States Attorney's Office
> 300 Mulberry Street, Suite 400
> Macon, Georgia 31202

March 6, 2023.

> MOLLY HILAND PARMER
> PARMER LAW
> 1201 W. Peachtree St. Suite 2300
> Atlanta, Georgia 30309
> Molly@Parmer.law
>
> Counsel for Demetris Hill